Hillsborough, }
   Dec., 1900.  {

## Mitchell v. Union Electric Co.

## Union Electric Co. v. Mitchell.

A legislative charter is to be so construed as to exclude an exemption from the operation of general law, when such interpretation can fairly be given to the language used and a contrary purpose is not plainly and clearly expressed.

A petition under the flowage act for the assessment of damages cannot be maintained by a landowner against one who claims no right of flowage under the act.

Petitions, (1) by a landowner for the assessment under the flowage act of damages to his land, and (2) by the corporation

flowing the land for an assessment as in highway cases, because of a provision in their charter.

*Burnham, Brown & Warren,* for Mitchell.

*Taggart & Bingham,* for the Union Electric Company.

WALLACE, J.   The Union Electric Company were authorized by their charter (Laws 1893, *c.* 201, *s.* 2) to locate an electric station in Goffstown, to run it "by steam power or by water power furnished from some suitable mill site on the Piscataquog river," and to "maintain dams and flow lands bordering on said river necessary to carry on" their electrical business, "first agreeing upon such flowage damages with the owners of said lands." The charter gave them the right to locate their "lines of wires and other means of transmission over or through public or private property or lands, permission being had and a price agreed upon between the parties in case of private property, and in case of public property between the selectmen and said corporation." Laws 1893, *c.* 201, *s.* 3.   The charter further provided that in case the company were unable to obtain a suitable location of their "wires or other means of transmission, or to adjust the damages for lands flowed or to be flowed as aforesaid by agreement," they may "apply to the supreme court to have such location made and damages awarded to the parties aggrieved in either case, and the proceedings on such application shall be as prescribed by law for the laying out of highways, so far as the same may be applicable." *Ib.*

The Electric Company having flowed Mitchell's land, he brings his petition to have his damages assessed under the general flowage law.   P. S., *c.* 142.   The company claim that this statute is not applicable, and file an answer in which they disclaim any right to maintain a dam and flow any land of Mitchell's under and by virtue of the provisions thereof.   The company also file their petition to have Mitchell's damages assessed as in highway cases, in accordance with the terms of their charter.   The question presented is whether the procedure should be under the flowage law, or as in highway cases.

The flowage law has been in force for more than thirty years, and its provisions have been repeatedly construed and sustained by this court.   The principles embodied in it may be regarded as the established policy of the state upon that subject.   The construction of the charter for which the Electric Company contend would give them an exemption from that law, and would permit them to acquire flowage rights under their charter in a special manner not enjoyed by people in general.   In this respect it would confer upon

the company a special privilege. It would enable this corporation to appropriate Mitchell's land to their use without establishing the fact that the flowage thereof would be of public utility, or was even necessary to the mill or water power.

Charters which confer special privileges are construed most favorably to the public and in favor of those against whom the privilege is claimed. 4 Thomp. Corp., _ss._ 5345, 5659, 5662. It is not to be presumed that the legislature intended to grant an exemption from the operation of a general law unless that purpose is plainly and clearly expressed. That construction will be adopted which excludes such exemption, and makes the grant operate in harmony with and subject to the general law, when such interpretation can fairly be given to the language of the charter. _DeLancey_ v. _Insurance Co._, 52 N. H. 581; 4 Thomp. Corp., _s._ 5671. The Electric Company's charter says that the corporation " may maintain dams and flow lands . . . to carry on said business, first agreeing upon such flowage damages with the owners of said lands," but it does not give the company that right where they fail to make such agreement. There is no provision of the charter conferring upon them the right to flow lands, or authorizing them to acquire such right, without an agreement with the landowner, except it is inferred from the language which says that when they are " unable to obtain a suitable location of " their " wires or other means of transmission, or to adjust the damages for lands flowed or to be flowed as aforesaid by agreement," they may " apply to the supreme court to have such location made and damages awarded to the parties aggrieved in either case." Laws 1893, _c._ 201, _s._ 3. There is nothing in this language to show that the application to the supreme court was not to be made under and in accordance with the provisions of the flowage law. It is not to be presumed or inferred that the legislature intended to exempt this corporation from the operation of the general flowage law and confer upon them a special privilege, in the absence of language clearly expressing that purpose. Nor is there any reason apparent why the legislature should wish to do so.

The charter authorizes the corporation to apply to the supreme court, when unable to obtain a suitable location of their " wires or other means of transmission," to have such location made. Here is an express provision conferring upon the corporation the privilege of acquiring by eminent domain a location of their wires and other means of transmission over the property and land of persons with whom no agreement can be made as to such location. A tribunal is empowered to hear and determine the question of taking private property for a public use. It is significant that the charter contains no provision for the litigation of the question of

taking lands by flowage, or provision of any kind authorizing the acquisition by eminent domain of the right of flowage over the land of those with whom no agreement was made as to that right. It is apparent that the legislature intended that the company should obtain under the general law any flowage right which they desire, in addition to what they might acquire by purchase.

This view is strengthened by what follows in the charter. There were two kinds of damages which the corporation might have occasion to have assessed,— those caused by flowage, and those caused by the location of their wires and other means of transmission. They were authorized to apply to the court to have damages of either kind awarded, "and the proceedings on such application shall be as prescribed by law for the laying out of highways so far as the same may be applicable." In the case of damages for the location of wires and other means of transmission, the proceedings for the laying out of highways would be applicable. In case of damages for flowage the highway proceedings would not be applicable, because there was a fit and appropriate remedy for the assessment of those damages provided by the law under which the question of taking the property was to be determined. The use of the words "so far as applicable" indicates that the legislature had in mind that the procedure prescribed by law for the laying out of highways would not always be applicable. There is no case where they would not be applicable except in the matter of flowage rights. If this construction is not given to these words, they are meaningless and were put there for no purpose whatever. No other explanation appears why they were used.

The charter gave to the corporation no special rights of flowage. The company can therefore acquire no flowage rights in Mitchell's land, nor have the damages for taking such rights assessed, except under and in accordance with the general flowage law. The company's petition will therefore be dismissed.

The Electric Company, in their pleadings, expressly disclaim any right to flow Mitchell's land under authority given by the flowage law. If the company still adhere to this position, Mitchell's petition will be dismissed, as it cannot be maintained against one claiming no right under the flowage law. The company would then have no flowage rights in Mitchell's land, and he could proceed against the corporation in an action at law to recover his damages, and, if the flowage should be continued, by a bill in equity to abate it. *Chapman* v. *Company*, 67 N. H. 180 ; *Jones* v. *Whittemore*, *ante*, p. 284.

*Case discharged.*

All concurred.